The next matter on our calendar is Larry Thompson v. several police officers. May it please the court, Amir Ali for the plaintiff appellant Larry Thompson. Reversal in this case is warranted for two reasons. First, because the district court erred in holding that pursuing a defense to the point of outright dismissal of all criminal charges is not a favorable determination of the criminal proceeding under federal law and common law tort principles. Second, the district court erred in instructing the jury on unlawful entry both because it assigned Mr. Thompson the burden of proving the non-existence of any exigency and because defendants did not produce any evidence of an imminent danger that would have prevented them from calling in a warrant while Mr. Thompson was standing with them and indeed secured on the floor. I'd like to focus on the dismissal of the malicious prosecution claim because I think common law tort principles and this court's precedent recognize a really straightforward test. Judge Weinstein didn't think so. I thought we were here on Judge Weinstein's petition for rehearing and bank of our precedents. Well, Your Honor, I think that Judge Weinstein did express that this is a quite, I think he used the word insane result at some point in the trial. I think we agree with much of what Judge Weinstein thought with the exception of that he was bound by this court to reach that insane result. And I think this goes to the test I was about to articulate, which I think is recognized through decades of this court's case law. And I will directly confront Lanning, which is obviously the court that Judge Weinstein felt confronted by, if I may proceed on that. So the test we think is reflected by this court's case law and by the common law is that when a defendant defends against charges to the point of dismissal, the common law used the language formal abandonment of proceedings, it is a favorable termination of the criminal proceeding unless it was an exchange for consideration from the defendant in the form of a plea, some sort of compromise or a request for mercy, or it was caused by the defendant through fleeing or some sort of act of fraud. That's SPAC. That's the restatement. We think the restatement, I really implore the court to look at restatement 559 and 560. It couldn't be clearer on this point. And I just note that defendants do not contest that that is the principle under common law. Nowhere, if you look at their entire section of their brief that is on favorable termination, they never once mentioned the phrase common law. OK. And everybody agrees that's the inquiry under the Supreme Court's case law. And that's the inquiry under Lanning itself, which cited at the statement the sentence that defendants hang their hat on, cites restatement 660. So everybody, Lanning, the Supreme Court, SPAC and decades of this court's jurisprudence rely on common law tort principles. And let me just read the restatement because I think it is very clear. So restatement 659C says criminal proceedings are terminated in favor of the accused by the formal abandonment of proceedings by the public prosecutor. So that's the sentence that says this dismissal is a favorable termination. The very next section, 660, says a termination of criminal proceedings is not a sufficient termination if A is compromise. That's one of the ones I mentioned. B is misconduct by the defendant. And those are quotes from the restatement. Compromise is the word used. Misconduct is the word used. And C, mercy. Now, that was what was at issue at Lanning, OK? If you look at the sentence, there are two labels used. There's affirmative indications of innocence is the language, the artful language of common law, which is represented by the restatement. And Lanning says that's worth getting that. And then there's what the label used is inconsistent with innocence, is how the Lanning court kind of labeled what the New York Court of Appeals position was. But what that label was in Lanning itself was taking the provision I just read to you, 660, which lists compromise, misconduct, and mercy, and crossing out the mercy exception. If you look at what Lanning was saying, the very sentence that the defendants are relying on says the problem is that the New York Court of Appeals, quote, deviated from the restatement by holding that an interest of justice dismissal is a favorable termination. And what they effectively did was cross out that line of the restatement. And what the Lanning court said was, no, no, no. We apply the common law, federal, we apply federal law for this question, which tells us to look under Manuel, the court cited, Manuel, the Supreme Court's decision, which tells us to look at the common law. So we don't think that Lanning, as defendants would say, intended to depart from and totally overhaul the common law, I think. Wait, wait, wait. There's a little fancy footwork there, right? Because didn't they actually cross out the word mercy? Because isn't that what they're saying when they say interests of justice dismissals are not good enough? If an interest of justice dismissal, it can only be based on two things, it seems to me. It's in the interest of justice because the guy didn't do it, and we couldn't prove that he did it, and we think he should be let go. Or it's an exercise of mercy. And either way, the Lanning panel seems to say it doesn't count. So why is that? To be clear, that wasn't Lanning. The court had done that two decades earlier in Hawaii and said that under the specific New York provision scheme for interests of justice dismissals, that that is not a favorable termination. We don't contest that. It's even deeper than Lanning. Wasn't that what this was? This was the interest of justice. Well, so, Your Honor, that's a separate point. So I do think defendants make a point that you can – so our view of the case, just to be very clear. The prosecutor in this case said, I want a dismissal of these charges in the interest of justice. Now, let me tell you, if I was writing on a clean slate, I would say when the prosecutor says it's in the interest of justice that this man not be prosecuted anymore, that sounds like about as favorable a disposition as you can get. But – but our precedents say it's not. And that – Well, so can I be very precise on this? So your precedents say, I agree with you, that if there is an interest of justice dismissal under 170.40, the specific scheme, then it's not a favorable termination. I'm with you on that. It does not say that merely standing up in court and saying that this is – we're dismissing, consenting to the dismissal, which can't be under 170.40, just simply asserting we're dismissing the case in the interest of justice is an interest of justice dismissal. Remember, the record here is that – So the requirements for an interest of justice dismissal because the judge didn't say why it was in the interest of justice, I understand that, but that that violation, if it is one of the State scheme, means this is somehow a dismissal other than a dismissal in the interest of justice? So, Your Honor, a couple of points on that. So first, we think that on this record, it's not just that the judge didn't make specific findings. It couldn't have been. There was no motion for it to take place under that ruling. The actual history here, remember, is that Mr. Thompson's offered an ACD. That's pretty much the best thing – one of the best things you can be offered, right? I get all that. Goes away. It's sealed. He says no, even though everything would go away. Defense counsel then moves because this is not legally a crime. No, it wouldn't go away. An ACD, it wouldn't go away. He'd be on probation for a year, and if he screwed up, the charge comes back. It's a much better disposition to get a dismissal outright in the interest of justice. Well, so let me say this off the bat. If the Court thinks there's some sort of factual dispute, whether this was – I don't think there's a factual dispute. I know what happened. The question is, as a matter of law, when the prosecutor gets up and says, I want a dismissal in the interest of justice here, and the judge says, okay, dismissed, without going through a statement of approving what the prosecutor did, the way New York wants the judge to do, that's not an interest of justice dismissal, even though that is the basis on which the dismissal was sought. So, Your Honor, I think that that's – it's not an interest of justice dismissal. And I think if you look at New York case law – I mean, New York case law, there are many, many cases that make very clear judges have to make these findings. There has to be a motion. There's a specific procedure. And if you look at what was actually said, it follows from the conversation that was just had. You remember this is the stand-in prosecutor. It's not even the person who had the conversation, right? So a conversation has happened with the actual assigned-line prosecutor, and the evidence in the record here from defense counsel is that there was a legal problem with this. What you're basically asserting in your information is that he asserted – That's what the defense lawyer argued. That's what the defense lawyer said to the prosecution. That was the defense lawyer's motion, which was not granted. So what happened was, hearing one, the judge says, you know, please submit your motion in writing. In between hearing one and hearing two, defense counsel talks to the prosecution, says, you've got a legal problem here. Prosecution says, we're dismissing charges. Hearing two, defense counsel stands up, and this is what's on the record, and says, the people have agreed to dismiss the case. That sentence does not make sense if this is an interest of justice dismissal because there has to be a motion. Then is interrupted. Did the defense lawyer ever say in her testimony that, after that meeting, I knew we had an agreement that they were going to dismiss because they agreed with my argument? Well, she said that, yeah, I mean, that's what she represents in court. She stands up and says she's the first person to speak. And she says, they have agreed to dismiss. That does not make sense if this took place under that scheme. So I think that's alone a factual issue. Then the States that — Wait a minute. If there's some discussion between the prosecutor and the defense lawyer, and the prosecutor says, okay, whatever, I agree, I'll dismiss it on the — in the interest of justice, and comes into court and that's what he asked for, that we're supposed to infer that that's not what he was doing, but he was doing something else? Well, I think the point, Your Honor, is that you can't agree to that. I mean, the specific provision says there has to be a motion. A judge has to consider ten factors and write the specified reason. So we think that, at the very least, creates a factual issue. I mean, I think — we think, actually, it's pretty clear this was not an interest of justice. Remember, I mean, interest of justice is a common phrase. It's used thousands of times in the New York Code. It's used in 150 different provisions of the criminal law section alone, not referring to this special scheme that's very rare under New York case law. So the idea that we can just presume that the prosecutor — because the prosecutor attached that to the end of their consent motion. I mean, the vast majority of dismissals that take place in this fashion are just moved — coming into court under the prosecutor's consent, which is what defense counsel said, they agree. The prosecutor says, we agree to dismiss the charges in the interest of justice. We agree is a consent dismissal. And I think that's the vast majority of dismissals. But I thought they weren't supposed to consent. That's why you have this interest of justice provision. No, Your Honor. There's an express provision. We cite it in our reply brief. Defendants acknowledge it. But they can do — they can do, in effect, just a straight molly. Absolutely, yes. If that's not clear, that needs to be absolutely clear. Prosecutors in New York can do a dismissal solely on their consent. And I'll have the provision for you when I stand up in my rebuttal. And I'm sorry if that was not clear. But the vast majority of dismissals are prosecutors standing up in court saying, we agree to dismiss the charges or ACDs. This is a very rare mechanism that defendants are asking. Now, I want to be clear. I agree with you that if you can conclude as a matter of fact, you know, as a matter of law that this was an interest of justice dismissal, under the specialized mechanism that the court has held that's a favorable termination. But I just don't see how that's plausible here because you're basically saying, as Judge Weinstein was very troubled by, the mere fact that a prosecutor consents to the dismissal and adds this generic language. I mean, this certainly was in furtherance of justice. But it was not under the specialized scheme for it. And there's nothing in the record that indicates that specialized scheme was held. And so you're characterizing this as an issue of fact or as an issue of law? I mean, Judge Weinstein, whatever he thought of this court's jurisprudence, thought that this was such a dismissal, right? That's the basis on which he concludes that it comes within landing. Right. So I think there's a question of fact and a question of law. There's a question of fact as to what actual mechanism was used here under New York law. That's a question of fact for the purposes of then answering the legal question of whether there was a favorable termination. Isn't there a legal question as to what New York, what kind of disposition this was under New York law? I mean, I think for the purposes of the favorable termination inquiry, we need to figure out what, in fact, it was. Don't you want it to be a question of law? Because if it's a question of law, we should be as good at figuring out what New York law is as Judge Weinstein was. If it's a question of fact, then if he found that this is what it was, then it's a clearly erroneous standard of review. So I don't think so. It's certainly not a question of fact that a judge can decide. Actually, favorable termination is frequently submitted to the jury, I believe. No, not favorable termination. Was this a dismissal under this particular provision of New York law? Right. We know the facts, which I think are essentially undisputed because they're on the transcript of what was said. Yes. We know what the defense lawyer said in her testimony, and no one disputes that that was credible. So we have an account of the events, and the question that you're raising, I think, is does this amount to an interests of justice under New York law dismissal? And if it was, then the next question of law is decided by the Lanning case. If it was not, as a matter of law, as a matter of New York law, such a dismissal but comes under some other rubric, then the New York Court of Appeals would say, oh, of course, this is not an interests of justice dismissal because we didn't go through the steps that are required for that. And that's very rare. And instead, it's just the prosecutor abandoning the case. That's what it is. If that's what it is, then it doesn't come under the Lanning prohibition. And then we would be answering a different question, the subsequent question of federal law. Is this kind of dismissal a favorable termination? That's very much our position, and I don't want to fight you too much on it. We don't think there's an issue of material fact that gets in the way of saying this is not an interests of justice dismissal under the specific scheme that was at issue in Lanning and High. I mean, there was no motion under that scheme. The language used was this is a consent dismissal under the New York provision, which allows consent dismissals. And the only thing there is, is this phrase, interests of justice, the generic phrase, again, used all throughout New York law, at the end of the prosecutor's unilateral statement. And of course, the next line, without the opportunity for defense counsel to say anything, is case dismissed. Let's stop here. You have three minutes for rebuttal. Okay. Thank you. We'll hear from the police officers. Morning. Good morning. May it please the Court, Kevin Osowski, on behalf of the individual defendant and appellees. Mr. Thompson asks this Court to revise or abandon its clear precedent that, one, affirmative indication of innocence is required to sufficiently plead a 1983 malicious prosecution claim, and, second, that plaintiffs retain the burden of proof in 1983 search cases involving exigency. This Court should affirm with respect to the lower court's decision. First, with respect to what Lanning was actually doing, Lanning was clear in stating that a 1983 malicious prosecution claim requires that the plaintiff prove an affirmative indication of innocence. And so to the extent that we're discussing whether the – what the standard, what the requirement is for a plaintiff in Lanning, it's actually that there's an affirmative indication of innocence. Well, suppose the prosecutor just comes in and says, we don't want to do this anymore, we're consenting to dismissal of the charges unconditionally, no ACD, no nothing, we're just walking away. Right. Period, end of story, everybody leaves, which is what the plaintiff is contending occurred here. Correct. And under our – under the New York State standard, the plaintiff may have a malicious prosecution claim that is not inconsistent with – not inconsistent with his innocence. But here, with respect to the 1983 malicious prosecution claim, he's required to prove something more and actually show affirmative indication of his innocence. With respect to whether the – when a claim has been withdrawn or abandoned pursuant to a compromise with the accused, this Court has previously held in Povent hood. This is clearly not a compromise. Right. This is not an ACD. But this is – It's not any kind of compromise. The defendant is giving nothing in exchange for this dismissal. Right. But this – so the – Mr. Thompson's argument is that this case was not dismissed in the interest of justice. The only other alternative is that this case was withdrawn. And this Court has said that a withdrawal is not sufficient to show the affirmative indications of innocence required. And the circumstances don't matter. That is to say, we don't look at all at anything in the record that might give us a clue as to why the prosecutor would walk away from a case. Well, here the Court actually did. The Court held a hearing to see whether there was affirmative indications of innocence. And all of the evidence that was produced during that hearing, at which Mr. Thompson bore the burden of proof, did not support indications of innocence. So – Well, certainly the defense lawyer thought there were lots of indications of innocence and that she made a pitch to the prosecutor on exactly that ground. Well, actually, the defense lawyer, when she testified at the hearing in Mr. Thompson's Federal case, said that she wasn't sure what she said to the prosecutor, that she couldn't remember. And she testified that the criminal transcript does not include indications of innocence. So she herself was admitting that – Transcript says – That's just a fact. The transcript says nothing about innocence or why the prosecutor is walking away. Correct. And – but Mr. Thompson also had no – he didn't meet his burden of proof with respect to demonstrating that the – that his case was dismissed in a way that indicated that he was affirmatively innocent. Is there anything at all in the record with respect to any mitigating circumstances or things about Mr. Thompson that would lead a prosecutor to think, well, even if I have a decent case that he's molested an innocent infant, he's a nice guy. I'll let it go. Well, and to be clear here, the charges that were dismissed were obstruction of government rights. So it's not – we were talking about the – We were talking about that. The sexual abuse claim. And there I think there's abundant evidence to demonstrate that Mr. Thompson had obstructed governmental administration. In fact, the jury, when it tangled with the question of whether Mr. Thompson's arrest was proper or not, found that there was evidence to support that Mr. Thompson had not been falsely arrested. Okay. So I don't want to put words in your mouth, but let me try it this way. Is this sort of an argument that if the reason why the prosecutor dismissed the case was that sadly this was all a mistake in the first place, that he hadn't done anything wrong, he was the victim of a sort of crazy person calling the cops on him for no reason, and therefore even if he obstructed the police in their legitimate inquiry into what they thought was a child abuse case, there's reason to forgive him for his obstruction of the police or his resisting arrest or even for punching somebody or whatever might have occurred. Whether or not it did occur, whether or not he is guilty, we're kind of to blame in the first place, so we're going to walk away. That would not be indications of innocence in your argument. Yes, Your Honor. And I think the facts in Singleton v. City of New York, which is an older case from 1980, where there was such a wrongful arrest for the — the arrest was wrong, but the defendant was prosecuted for resisting and obstructing, I think that shows that — and there, of course, the defendant took an ACD. But the court clearly held that termination in favor of the accused only happens when that final disposition indicates that the defendant was not guilty and not where there's open to a question of whether the defendant was guilty or not. I also want to briefly address the — Mr. Thompson's arguments with respect to who bears the burden of proof with respect to the unreasonable search claim. This Court has long held that the — that while there is a — sorry, while there is a requirement that the government produce some evidence of the warrant exception, that the ultimate burden of proof remains with the plaintiff. And that's something that the Court held in Ruggiero and then recently reiterated in Harris v. O'Hare, which I think was a Judge Pooler decision. That — I think what's interesting about Harris v. O'Hare is that it demonstrates that placing the ultimate burden on the plaintiff does not mean that there's a meaningless burden of production on the government. And in Harris, there just simply weren't sufficient facts to show that exigency exists. Here, we submit there were sufficient facts to show that exigency existed. I'd also like to note — And that was tried to the jury. That one? Yes. And this case, too, went to the jury. And the jury, hearing all the facts, hearing the witnesses testify about what happened, concluded that there was — there was exigency. I think it's also instructive to look at the Court's instructions to the jury with respect to this case and with respect to Ruggiero. In Ruggiero, the — in Ruggiero, the instructions are pretty neutral and inform the jury about their balance of whether consent existed for the search. And here, Judge Weinstein's instructions to the jury were that if the fine that is unreasonable under the circumstances for a defendant officer to believe that there was an urgent need to prevent ongoing harm to the child or provide immediate aid to the child, then the defendant's entry was lawful and you must find for the defendant. So that was how the jury was instructed there. As a last point, I see that my time is almost up. In any event, the Court was proper in dismissing Mr. Thompson's malicious prosecution claim because Mr. Thompson had failed to show a lack of probable cause, as required by this Court in Mitchell v. City of New York from 2016. And all the testimony that was presented to the jury led them to conclude that the entry here was justified, and so there was — and they rejected the false — false arrest claim indicative of that. In the light of this, there was ample probable cause for an officer to believe that Thompson had obstructed governmental administration and was properly prosecuted for that claim, unless the Court isn't — thank you. Thank you, counsel. Mr. Ali, you have two minutes, three minutes. Thank you, Your Honor. You still have to deal with Lanning. Yes. You have to tell us why Lanning isn't dispositive of your case. Sure, I will. Before I forget, I promised Judge Lynch I would get him a provision, which is Criminal Law — Procedure Law 300.40, and it's subsection 6. That's the one that allows consent dismissals, which are the ordinary thing. Let me go right to Lanning because I think it's important. In Lanning, the Court specifically said, when it was adopting this common-law phrase, that it — this Court's current decisions — this is on page 25 — that current decisions will continue to govern. It clearly did not assume it was overruling prior decisions. Let me start listing the number of this Court's prior decisions that would be overruled by this position. SPAC. SPAC was a case involving a null prosecution, basically a consent dismissal that doesn't have to go to court. The Court in SPAC actually expressly rejected this interpretation of affirmative indications of innocence. Respondents don't even address that once in their brief. Murphy and Poser, these are cases that involved speedy trial violations or failure to prosecute. Nothing to do with innocence. Those cases were favorable terminations. In fact, the Boyd case that this Court — But, you know, what you're doing is you're supporting Judge Weinstein's argument that we ought to revisit these precedents and make some sense out of them, because it seems to me that Lanning is saying that an interests of justice dismissal doesn't count when a speedy trial dismissal does. I always thought that what New York prosecutors did was let the clock run when they thought the guy was innocent, and then they'd have a dismissal on speedy trial grounds because they didn't want to say that the guy was innocent because they were hoping that that might insulate everybody from any kind of liability. There's a lot of mess in this. So you actually don't think there's that much mess. We read Lanning to really simplify things. There's a single body of law you look to, federal law, federal common law. Again, it quotes at the end of the sentence, Restatement 660. We agree that an interests of justice dismissal, if you think this is under that New York specialized scheme, we think you're wrong about that. If that's what the Court concludes, then this was not a favorable termination. But if this was an outright dismissal, meaning if it was not an interests of justice dismissal under the specific scheme, then under the common law, which is referred to by Lanning, and under the line drawn in decades of cases, it's very clear that this was a favorable termination. And if I could, I'm happy to answer more questions. I'll turn to the exegetes. Kennedy. But what Lanning was saying was we don't deviate from the common law, but we deviate from New York's interpretation of the common law. Right. And what you're really saying is New York's interpretation of the common law is a better interpretation of the common law. No, please, Your Honor. I'm not saying that at all. What I'm saying is if you read 660, which is the provision that Lanning cited, read 59 and 660, sorry, 559 says the formal abandonment of proceedings is a favorable termination. We believe this is a formal abandonment of proceedings. Now, in 660, this is the provision cited by Lanning for the definition of what is an affirmative indication of innocence. It rules out a few types of formal abandonments, okay? One is when there's a compromise, a plea. One is the defendant's misconduct. And third is mercy, okay? That's the interests of justice dismissal. That's high. That's Lanning. We agree that under the common law, under the federal law, if you proceed under the New York provision, that is not a favorable termination, okay? What we're saying is that didn't happen here. There's no evidence in the record except for a unilateral statement by the prosecutor. This can't be a unilateral thing. But there's nothing on the record other than a general statement that he was doing this in the interest of justice. He was agreeing under the provision I started with in my rebuttal to the dismissal and because they saw it in the interest. Can you explain to me how that shows affirmative indications of innocence? Well, so affirmative indications of innocence is a common law phrase. And I really implore, we cite the paragraph of SPAC that specifically deals with this argument. Remember, SPAC was a formal abandonment of proceedings in the form of a Connecticut null prosecution, just deciding not to go forward, but there's no court involvement. And I'd actually just really encourage the court to read the comments. Again, this is the exact provision cited in Lanning. The comment to Restatement 559 says, null prosecution is the exact same as a consent in court to dismiss charges. That counts as a favorable termination. I actually probably should read you the language really quickly. It says, this section, this is the section saying that formal abandonment of proceedings is a favorable termination. This, the rule stated in this section is applicable to any method by which a public prosecutor may formally abandon the prosecution of the proceedings. For example, a motion to dismiss the complaint. So any formal abandonment except for those ones that I listed in 660, one of which is mercy. Now, the reason I'm not saying New York Court of Appeals is the right way to go is because the New York Court of Appeals has held that an interest of justice dismissal even under that special mechanism. Careful, you didn't answer my question. Okay. And this one denotes affirmative indications of innocence. Well, Your Honor — Innocence means he didn't do it. My submission is that the court is relying on the common law definition of that because that's what it says it's doing. And let me just — the pragmatic concept — You know what innocence means? I know what innocence means. Well, it certainly doesn't mean factual — The Lanning Court knew what innocence means? So I think that's an accurate description of — my friend describes that as factual In court, he has to make some sort of statement saying, I'm dismissing this because I believe the guy's innocent. That doesn't happen. And so what I think Judge Weinstein recognized is that what you'd be saying is defendants have to stand up in court — and this is the actual exact argument that was made by defense counsel Blow — to stand up in court and contest the dismissal, expose yourself to criminal liability, in order to argue that you get to a favorable termination. And let me just say it's more — I want you to put on the record that my client is innocent of these charges. That's where the issue was joined. Right. And if the judge says no, you're out of luck.  No, the judge says no, the judge grants the motion anyway because the prosecutor's walking away or saying it's in the interest of justice or whatever the prosecutor says. Right. So, Judge Lynch, you gave the example of kind of sadly we're dismissing this case. It could be not just that. It could be retaliation for exercising your constitutional rights, as we think here. It could be racially motivated charges. And you're saying you pursue this to the point of outright dismissal, and because they don't admit it — No, they got an outright dismissal. They pursue it to what we have said is required to prevail in malicious prosecution cases to show affirmative, excuse me, indications of innocence. Well, in addition to the pragmatic concern of actually having a defendant have to contest the dismissal of their charges, I mean — I don't understand why the defendant has to contest anything. The question is what the prosecutor does. And the prosecutor here is making a particular kind of motion. Now, maybe it's defective. I don't know, under New York law. But the prosecutor gives a reason. And the defendant, you know, if the defendant had gotten up and said, I'm asking that this be dismissed because you can't have obstruction of government administration in your own house, which strikes me as a very dubious proposition of law, and the prosecutor said, yep, right, we consent, that would be one kind of dismissal. And if that was wrong as a matter of New York law, it wouldn't matter. The prosecutor agreed to a dismissal on that basis, which would be a favorable termination. It doesn't matter what the judge thinks in the judge's head. If the judge thinks, well, that's a pretty dumb motion, but the prosecutor consents, so fine, then it's granted on the basis that was offered to the court and consented to by the prosecutor. But here the prosecutor is saying this is a dismissal in the interest of justice. That's the reason I'm giving. Without saying why it's in the interest of justice, could be because we have no proof at all that he ever did anything bad to the police officers when they came through the door. Could be because, eh, it's a close case, and after all, the officers were inadvertently to blame. It's understandable why the guy was upset, since he hadn't done anything wrong before that would lead the police to be at his door. So we let it go. There could be a lot of reasons why that's a dismissal, other than the man is innocent of obstructing administration. So, Your Honor, I don't, like I said, I don't disagree with you if you conclude that it was under that scheme. We think on this record you can't reach that conclusion because there's no indication aside from that generic statement, interest of justice, that this actually took place under that scheme. We think that the evidence on this record is that this was dismissed because there was a legal problem with the charge. And I do think you have to look at it from the perspective of the plaintiff, a plaintiff who believes he was unreasonably deceived. Put his life upended here. I mean, Mr. Thompson lived in this apartment nearly his whole life. He was looked at as the peacemaker. His nickname was Pumpkin. He was thrown in jail, marched out in handcuffs in front of his neighbors, and is now reputed as a child. All of that was approved by the jury. The jury said there was probable cause to do all of that. Well, Your Honor, the probable cause at false arrest is very different. The probable cause at the false arrest stage certainly cannot be relevant here for two reasons. I mean, the standard is different, right? The probable cause of the officers on the scene versus bringing charges. But also there were other bases at the time for the jury to find probable cause. There were two extra types of crimes that they alleged probable cause that Mr. Thompson was never actually even charged with. So that's completely irrelevant, the fact that the jury might have found probable cause on completely different crimes in a completely different threshold for probable cause. But my point here is that Mr. Jones wanted to sue because he believed he was wronged and that he was, in fact, having retaliation for just exercising his constitutional right at his door. And in other cases, it might be racially motivated. It might be retaliation for other types of constitutional rights. Not many people believe that their rights were violated, and that's why they bring suit. And they may very reasonably believe that. The question is whether the elements of a claim are made out. Right? He may have believed that he was singled out for racial reasons, for example. If that was his belief, it would be understandable why he was very upset by this. And he may have even made some argument that I shouldn't be prosecuted because this is all racially motivated. But if the prosecutor says I'm dismissing this for some other reason, and that's why the court dismisses it, not because it was a malicious prosecution from the start, like a racially motivated prosecution, not because there was no probable cause to believe in the offense that was presented, but because the prosecutor makes a certain kind of decision, a resource decision, whatever else, and makes that motion and it's granted. All you're really saying is when you say it wasn't under this rubric, well, that's the only rubric that's offered. And if it's defective as a reason, that doesn't defeat the fact that the dismissal was sought and granted on a particular basis. I think the submission I'll leave you with is that that's not the rubric that was offered. He said I agree to the dismissal. The people said the prosecution have agreed to dismissal. That's a 30.40 dismissal. That's the dismissal that happens every day. And if the result is that a prosecutor merely standing up and saying the words interests of justice extinguishes these claims, and again, I'm not fighting Lanning. I think that's right. The ultimate conclusion of Lanning is right. But if that's what converts it into the specialized scheme that nobody in that courtroom, I think, the public prosecutor, the prosecutor wasn't called here. I don't think the prosecutor would even say that, frankly, based on New York practice, that this was the special scheme, interests of justice dismissal. But if that's the threshold, I think all of these claims go away. And that's why I'm saying to look at it from the perspective of the plaintiff as well, who has to, you know, like, who you can't put all of the weight in these few words the prosecutor says. What does matter is why the court did it. And I think if you look at this record, if you look at the conversation that was had with the prosecutor, if you look at the fact that prosecutors can dismiss merely on their stipulation with consent, and that falls clearly under the common law as a favorable termination, the language here is the people are agreeing to dismiss. Yes, we agree to dismiss in the interest of justice. And that generic language is all over New York law. We'll stop. Thank you. Thank you both. Interesting case.